UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | |
| V. : | Criminal No.: 05-CR-00386-4(ESH) |
| : | |
| : | |
| ADRIAN JACKSON : | |

## MOTION FOR SANCTIONS DUE TO GOVERNMENT WITNESSES VIOLATION OF FEDERAL RULE 615

The Defendant, Adrian Jackson, by and through his counsel, Jon W. Norris, HEREBY moves this court for sanctions based upon the violation of Federal Rule 615 by two of the government's witnesses Detective Marry Counts and Detective Charles Proctor. Such violation has deprived Mr. Jackson of his constitutional right to a fair trial. In support of this motion Mr. Jackson states:

1. The Government has called two witnesses concerning the search and seizures that took place at 7921 Allendale Road, Landover, MD on October 24, 2005. Mr. Jackson was arrested at Allendale Road at the time of the search and seizures. These testifying witnesses were Detective Marry Counts and Detective Proctor. Both testified initially on Monday November 20, 2006.

2. Both witnesses testified about the location of the firearm that was recovered at that address. Both testified consistently on their direct testimonies. Both identified government exhibits about the location of the gun. Both identified the same government exhibits stating that the gun was located behind a specific Timberland shoebox.

3. On cross-examination Detective Proctor continued to declare that the gun in question was recovered from the closet depicted in Govts. Exhibit ADJ-SW-24, the picture with the Timberland box and a Scrabble box to the left of the Timberland box.  He clung to this testimony despite being confronted with defense exhibits Jackson 10 and Jackson 11.  Both were pictures of a closet that contained the same items (belts) as in Govts ADJ-SW-25 (the picture with the gun).  If that was true then Proctor (and Counts) were wrong about ADJ-SW-24 being the closet from which the gun was found.  Proctor testimony wound down with him saying" Something's not right.  I can't explain that.  Something's not right."

4. On Tuesday, November 28, 2006, the government recalls Detective Mary Counts to try and correct this problem in their case.  Through her they introduce another photographic exhibit depicting the closet where she claims the gun was recovered.

5.  On cross-examination, Detective Counts admits that she spoke with Detective Proctor after he had testified as they were leaving Court the day of their initial testimony.  She admitted that they discussed his testimony and issues surrounding questions and answers about the photographs Detective Proctor had been shown.  He admitted that he had been confused and wanted to know what she knew.  Detective Counts, also spoke with Case Agent Yanta about being recalled to testify about the Confusion surrounding the photographs and the gun.  Detective Counts also spoke briefly with Ms. Lieber the morning of November 28th.

## MEMORANDUM OF POINTS AND AUTHORITIES

Federal Rule of Evidence 615 was violated when witnesses Proctor and Counts discussed their testimony prior to Detective Counts being recalled as a witness.

Quoting in part from U.S. v. Michael Rhynes, 218 F.3d 310,334 (2000).

> The operative language of Federal Rule of Evidence 615 reads: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." This rule is designed to discourage and expose fabrication, inaccuracy, and collusion by limiting the ability of one witness to shape his testimony to match that given by other witnesses at trial. See Opus 3 Ltd. v. Heritage Park, Inc., 91 F.3d 625, 628 (4th Cir. 1996). The rule is one of the most important trial mechanisms for reaching truth. Indeed, it is recognized that the sequestration of witnesses is "one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice." Id. (quoting 6 John Henry Wigmore, Wigmore on Evidence § 1838, at 463 (James H. Chadbourn ed., 1976)). The mechanism is not a creation of Rule 615, but represents the wisdom of the ages. In the book of Susanna, in the Apocrypha, Susanna of Biblical times was charged with adultery, for which the penalty was death. Daniel, suspecting complicity between the two prosecutorial witnesses, issued this order: "Separate [the witnesses] far from each other, and I will examine them." Apocrypha, Susanna, v. 51 (New Rev. Standard Version). When the process revealed material discrepancies in the witnesses' stories, Susanna was acquitted and the witnesses were beheaded for giving false testimony. Professor Wigmore, characterizing the pedigree and importance of the sequestration rule, states, "There is perhaps no testimonial expedient which, with as long a history, has persisted in this manner without essential change." 6 Wigmore on Evidence § 1837, at 457.
>
> While the express directive of Rule 615 -- that witnesses be "excluded so that they cannot hear the testimony of other witnesses" -- suggests most immediately the exclusion of witnesses from the court-room, it has always been understood also to preclude the discussion among witnesses of testimony that has taken place in the courtroom. Common sense commands that if a rule prohibits a witness from "hearing" the testimony of other witnesses, **the prohibition is violated if the testimony of a prior witness is repeated and heard in the courthouse corridor or outside on the street**. (emphasis added) As Professor Wigmore points out, a sequestration of witnesses of necessity includes requirements that (1) prospective witnesses not consult with each other; (2) one witness not listen to the testimony of another; and (3) a witness who has left the stand not consult with a prospective witness. See 6 Wigmore on Evidence § 1840, at 471.

The Supreme Court stated in Perry v. Leeke, 488 U.S. 272, 281 (1989) that…

> It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed. Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say…

Mr. Jackson submits that the harm in this case is a result of Detective Counts being influenced by what Detive Proctor had to say to her concerning his testimony and his experience testifying and her then being recalled to testify about those issues. Allowing Detective Counts to again testify before the juror after she had discussed with Detective Proctor their prior testimony, was both extraordinary and egregious. The jury has now been allowed to hear Detective Counts explain away mistakes in the prior testimony. The testimony of Counts and Proctor was potentially some of the most damaging evidence affecting Mr. Jackson. Because they were not cooperating witnesses but rather law enforcement officers testifying about drugs and a firearm attributed to Mr. Jackson at the time of the execution of the search warrant and his arrest. Such testimony potentially impacts on Mr. Jackson in that it not only exposes him to significant enhancements of 5 or 7 years under 18 USCA§924(c)(1)(A), it could also bolster the government's conspiracy allegations. Defense counsel attempted to deal with this testimony the first time through. Where previously the jury had been left with Detective Proctor stating: " Something's not right. I can't explain that. Something's not right." The government is now in an unfair position of having been able to clean up the problem or right that wrong, with tainted testimony. The witnesses have discussed amongst themselves, that which was not right. The importance of clarifying such mistakes was made know to Detective Counts, in that she was informed that she would be recalled to testify about such mistakes or confusion. Defense counsel had requested a voir dire of the witnesses outside the presence of the jury on these issues. That request was denied, and the jury then heard Detective Counts explanations and corrections, which were influenced and tainted by her discussions with another witness..

## REMEDIES

Accordingly, Mr. Jackson is renewing his request for a mistrial. Should the Court hold fast in it's denial of that request, then Mr. Jackson would request the following sanctions: The Striking of all testimony of Detective Counts and Detective Proctor, including the exclusion of the gun and other evidence admitted through either of their testimony; The striking of all counts based upon their testimony; An instruction to the jury explaining the Rule on Witnesses and instructing that the testimony of witnesses who have violated the Rule, should be received with caution and scrutinized with care.

**WHEREFORE,** for the reasons stated above, and for all other reasons that might become apparent to the Court, Mr. Jackson respectfully moves this Court grant this motion.

Respectfully Submitted,

_____
Jon W. Norris (Bar # 426105)
LAW OFFICES OF JON NORRIS
641 Indiana Avenue, NW
2nd Floor
Washington D.C., 20004
(202) 842-2695